UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| STUDENTS FOR SENSIBLE DRUG POLICY FOUNDATION, on behalf of itself and its members; and KRAIG SELKEN, NATHAN BUSH & ALEXIS SCHWAB, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>MARGARET SPELLINGS, Secretary of the United States Department of Education, in her official capacity,<br><br>Defendant. | CIV 06-1010<br>**2006 D.S.D. 17**<br><br>ORDER AND OPINION |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

### INTRODUCTION

[¶1]   Plaintiff Students For Sensible Drug Policy Foundation ("Foundation") and three of its members instituted suit seeking a declaration that 20 U.S.C. § 1091(r) is unconstitutional, namely in violation of the Fifth and Eighth Amendments to the United States Constitution. Plaintiffs seek an injunction prohibiting the Department of Education ("DOE") from enforcing § 1091(r). Plaintiffs have filed a motion for a preliminary injunction and a motion for class certification. Defendant has filed a motion to dismiss.

### BACKGROUND

[¶2]   20 U.S.C. § 1091(r) was enacted as part of The Higher Education Amendments of 1998, Pub.L. 105-244, Title IV, § 483(f)(1). Section 1091(r) suspends eligibility for federal student aid for students convicted of any drug related offense. In 2006, Congress enacted The Higher Education Reconciliation Act of 2005, re-writing § 1091(r) to clarify that the suspension

provisions applied only to students who were already receiving federal student financial aid at the time of their drug conviction. Pub. L. 109-171, Title VIII, § 8021.

[¶3]   20 U.S.C. § 1091(r) provides:

> (r)  Suspension of eligibility for drug-related offenses
>
>> (1) In general[1]
>> A student who is convicted of any offense under any Federal or State law involving the possession of a controlled substance for conduct that occurred during a period of enrollment for which the student was receiving any grant, loan, or work assistance under this subchapter and Part C of subchapter I of chapter 34 of Title 42 shall not be eligible to receive any grant, loan, or work assistance under this subchapter and Part C of subchapter I of chapter 34 or Title 42 from the date of that conviction for the period of time specified in the following table:
>>
>> If convicted of an offense involving:
>>
>> | The possession of a controlled substance: | Ineligibility period is: |
>> |---|---|
>> | First offense | 1 year |
>> | Second offense | 2 years |
>> | Third offense | Indefinite. |
>>
>> | The sale of a controlled substance: | Ineligibility period is: |
>> |---|---|
>> | First offense | 2 years |
>> | Second offense | Indefinite. |
>>
>> (2)  Rehabilitation
>> A student whose eligibility has been suspended under paragraph (1) may resume eligibility before the end of the ineligibility period determined under such paragraph if –

---

[1]Prior to the February 2006 amendment, subsection 1 provided:

> A student who has been convicted of any offense under any Federal or State law involving the possession or sale of a controlled substance shall not be eligible to receive any grant, loan, or work assistance under this subchapter and part C of subchapter I of chapter 34 of Title 42 during the period beginning on the date of such conviction and ending after the interval specified in the following table . . .

> (A) the student satisfactorily completes a drug rehabilitation program that –
> > (i) complies with such criteria as the Secretary shall prescribe in regulations for purposes of this paragraph; and
> > (ii) includes two unannounced drug tests; or
> 
> (B) the conviction is reversed, set aside, or otherwise rendered nugatory.
>
> (3) Definitions
> In this subsection, the term "controlled substance" has the meaning given the term in section 802(6) of Title 21.

[¶4] The plaintiffs contend that the denial of continuing federal student financial aid based upon the conviction of a drug offense under § 1091(r) (which they have termed the HEA Aid Elimination Provision) violates the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution because it singles out, for denial of financial aid, the category of individuals with a controlled substances conviction. Plaintiffs contend that § 1091(r) violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because denial of educational loans to students convicted of a drug offense constitutes an additional criminal punishment.

## DECISION

### I. Equal Protection.

[¶5] The standard for reviewing the constitutionality of a federal statute that is alleged to apply to a certain class of individuals in violation of the Equal Protection Clause is well known. "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." Higgins v. Carpenter, 258 F.3d 797, 799 (8th Cir. 2001) (*quoting* City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). *Accord* Weems v. Little Rock Police Department, 453 F.3d 1010, 1015 (8th Cir. 2006).

> "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Lukowski v. INS*, 279 F.3d 644, 647 (8th Cir.2002) (*quoting FCC v. Beach*

    *Communications, Inc*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d
    211 (1993)).

Gonzalez v. Chertoff, 454 F.3d 813, 818 (8th Cir. 2006).

[¶6] Persons convicted of drug trafficking or possession offenses are not a suspect class. Rem v. U.S. Bureau of Prisons, 320 F.3d 791, 795 (8th Cir. 2003). The Constitution affords no right to a higher education. *See* San Antonio Independent School District v. Rodruquez, 411 U.S. 1, 37, 93 S.Ct. 1278, 1299, 36 L.Ed.2d 16 (1973), and Plyler v. Doe, 457 U.S. 202, 223, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786 (1982). Likewise, there is no fundamental right to the receipt of federal student financial aid.

[¶7] Because § 1091(r) does not implicate a suspect classification or infringe on a fundamental right, the legislation must be upheld if there is a rational basis for singling out students convicted of drug offenses which is related to a legitimate federal interest. Rational basis review is highly deferential to the legislative branch. Citizens for Equal Protection v. Bruning, 455 F.3d 859, 866 (8th Cir. 2006). Thus, the classification (convicted drug offenders) created by § 1091(r) is afforded a "strong presumption of validity." *Id*. (*citing* Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).

[¶8] The classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Communication, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

    Thus, because all that must be shown is any reasonably conceivable state
    of facts that could provide a rational basis for the classification, it is not
    necessary to wait for further factual development. In other words, a
    district court may conduct a rational basis review on a motion to dismiss.

Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004) (internal quotations and citations omitted). All that the defendant must show is that a rational reason exists for the classification. Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). "Rational basis review does not require us to identify the legislature's actual rationale for the distinction; rather, we will uphold the statute if 'there are plausible reasons for Congress' action.'" Geach v. Chertoff, 444 F.3d 940, 946 (8th Cir. 2006) (*citing* Hamama v. INS, 78 F.3d 233, 237 (6th Cir.1996) (*quoting* United States R.R.

Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980))). It is enough if the proffered purpose "may reasonably have been the purpose and policy" of Congress. Nordlinger v. Hahn, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992). The district court is entitled to consider the language of the statute, together with any proffered assumption of legislative purpose, in its rational basis analysis. Knapp v. Hanson, 183 F.3d at 789 n.5.

[¶9]     Defendant proffers two justifications for the special treatment of students receiving federal financial aid who are convicted of drug offenses: (1) section 1091(r) deters drug-related offenses on college campuses and (2) prevents taxpayer subsidization of such conduct. The latter justification is enough, standing alone, to survive rational basis analysis. In fact, the legislative history of the 2006 amendment to § 1091(r) confirms that § 1091(r) "serves the purpose for which it was intended: to serve as a deterrent to prevent drug offenses while students are enrolled in higher education at taxpayer expense." H.R. Report No. 109-231.

[¶10]   Plaintiffs do not contest that the two purposes identified by defendant are legitimate governmental interests. Plaintiffs contend, however, that this court must determine whether the actual effects of § 1091(r) are contrary to the goals of the HEA as originally enacted in 1965 and whether denying federal financial aid to students who are convicted of drug offenses is rationally related to the goals of the HEA. I reject this contention outright. Plaintiffs' argument would constrict the ability of all future legislatures to add to or change a statute once enacted. Congress is not subject to a legislative form of *stare decisis*. The question is not whether § 1091(r) is rationally related to the original purposes of the 1965 HEA but instead whether 1091(r) is rationally related to the purpose of § 1091(r) or, for that matter, rationally related to any purpose. The statutory classification of student drug offenders "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Citizens for Equal Protection v. Bruning, *supra*.

[¶11]   Plaintiffs contend that they should be allowed to conduct discovery to determine whether, in fact, either threatened or actual withholding of federal student financial aid deters student drug offenses. In other words, plaintiffs seek an opportunity to conduct discovery which may show that discriminating against students who are convicted of drug offenses while receiving federal student financial aid does not in fact deter drug use by students. Plaintiffs further contend that

they should be allowed to develop the record to show that federal student financial aid recipients are not using student aid to subsidize drug use. Such a showing, plaintiffs contend, would demonstrate that it was not rational for Congress to believe that denying federal student financial aid to convicted drug offenders would further Congress' interests in curtailing drug abuse on campuses or preventing federal subsidization of drug use.

[¶12]   As long as defendant identifies any "plausible" reason to treat student drug offenders differently from other students, "the Court's scrutiny must end." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). Legislative choices "may be based on rational speculation unsupported by evidence or empirical data." Gilmore v. Douglas County, Nebraska, 406 F.3d 935, 939 (8th Cir. 2005).

> Thus, because "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) (quoting Beach Communications, 508 U.S. at 313, 113 S.Ct. 2096 (1993)). Accordingly, the district court was within its discretion to formulate a conceivable basis for the government action at issue in this case.

Gilmore, 406 F.3d at 939-40. Rational basis analysis is proper on a motion to dismiss -- the court need not allow further factual development. Knapp v. Hanson, 183 F.3d at 789, Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004).

[¶13]   All that is required to be shown here is that the relationship of the classification (different treatment for students committing drug offenses) to its goal (deterring drug related conduct on campus or the use of tax dollars to subsidize such conduct) is not so attenuated as to render the classification arbitrary or irrational. Nordlinger v. Hahn, 505 U.S. at 11, 112 S.Ct. at. 2332. Defendant "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe, 509 U.S. at 320, 113 S.Ct. at 2643. I find that the classification at issue here is rationally related to the goals of Congress.

[¶14]   It is true, as pointed out by plaintiffs, that students convicted of possessing small amounts of marijuana may be prevented from receiving federal student financial aid while those students convicted of serious sexual or other violent crimes would not suffer a similar fate. However, the mere fact that the classification results in some inequality or unfairness does not, in and of itself,

offend the Constitution. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy decisions made in areas that neither affect fundamental rights nor proceed along suspect lines." United States v. White Plume, 447 F.3d 1067, 1075 (8th Cir. 2006) (the ongoing debate about the psychological effects of marijuana versus its medicinal value was a sufficiently rational reason to include it on Schedule I).

[¶15]  Section 1091(r) implicates Congress' power under the Spending Clause of the United States Constitution, Art. I, § 8, cl. 1. Congress' power to legislate under the spending clause includes the power to fix the terms upon which it will disburse federal funds. *See* Penhurst State School and Hospital v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). Congress has determined that it will not disburse federal student financial aid to students convicted of drug offenses. I find that Congress' classification of those students eligible for federal student financial aid as set forth in 20 U.S.C. § 1091(r) does not violate the Equal Protection Clause.

## II. Double Jeopardy.

[¶16]  Plaintiffs also allege that § 1091(r)'s suspension of eligibility for education loans and other federal student financial aid to students convicted of drug offenses is a punishment prohibited by the Double Jeopardy Clause of the Fifth Amendment. The Double Jeopardy Clause prohibits "the imposition of multiple criminal punishments for the same offense" when the punishments are imposed in successive proceedings. Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* It does not prohibit the imposition of additional civil sanctions arising out of the conviction of an offense. *Id.*

[¶17]  Plaintiffs assert that resolution of the Double Jeopardy question turns on facts which must be taken as true at this stage of the litigation, thus defeating the motion to dismiss. I reject this assertion. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id.* The Supreme Court in Hudson set forth a two part inquiry: First, I must determine whether the legislature, in establishing the penalizing mechanism of § 1091(r), "indicate[d] either expressly or impliedly a preference for one label or the other." If the

legislature "has indicated an intention to establish a civil penalty," I must inquire "further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Hudson, 522 U.S. at 99, 118 S.Ct. at 493. The determination must be made based upon the statute on its face. Hudson, 522 U.S. at 100, 118 S.Ct. at 493. Resolution of the motion to dismiss plaintiffs' double jeopardy claim is a legal issue, Morse v. Commissioner of Internal Revenue Service, 419 F.3d 829, 834 (8th Cir. 2005), which can be accomplished without resort to facts outside the record.

### A. Civil vs. Criminal Label.

[¶18]   Congress did not label the sanctions at 1091(r) as either civil or criminal. There is no language as to "penalty." The statute speaks in terms of "suspension" and "eligibility." A student may regain eligibility early by completing a drug abuse treatment program that complies with criteria established by the Secretary of Education. Where the authority to strip eligibility is conferred on the appropriate administrative agency, prima facie evidence exists "that Congress intended to provide for civil sanction." Hudson, 522 U.S. at 103, 118 S.Ct. at 495. It would seem that the same rule would apply where the authority to reinstate eligibility is conferred upon an administrative agency. In any event, there is no indication in the statute that a criminal penalty was contemplated.

### B. Congressional Intent.

[¶19]   The second step of the Hudson analysis is to determine whether § 1091(r) is punitive either in purpose or effect. Hudson, 522 U.S. at 99, 118 S.Ct. at 493. The second step necessarily requires a two-part inquiry. I will first address whether § 1091(r) is punitive in purpose.

[¶20]   Plaintiffs argue[2] that the text and legislative history of section 1091(r) closely resemble that of the "criminal punishment" imposed by 21 U.S.C. § 862, the section of the Anti-Drug Abuse Act of 1988 giving discretionary authority to courts to deny eligibility for federal benefits

---

[2]Plaintiffs did not respond substantively to defendant's motion to dismiss plaintiffs' double jeopardy claims in the pleadings in response to the motion. All substantive arguments that section 1091(r) violates the Double Jeopardy Clause are contained in the briefs in support of plaintiffs' motion for a preliminary injunction.

to drug traffickers and possessors as a criminal penalty. Plaintiffs repeatedly contend that the Congressional Record is clear that § 1091(r) was intended as punishment by citing to the legislative history of 21 U.S.C. § 862, enacted as part of the Drug Abuse Prevention Act of 1988, and prior bills that did not pass. Congress' purpose in 1998 in enacting § 862 is not evidence of the intent of Congress in enacting 1091(r). Likewise, the purpose of certain legislators in promoting similar legislation in 1990 or 1991, which legislation failed to pass, does not evince Congressional intent in enacting § 1091(r) in 1998 or amending it in 2006.

[¶21]   Plaintiffs spent the greater portion of at least three briefs setting forth the legislative history of various other laws or proposed laws eliminating eligibility for federal student aid benefits beginning in 1990. Plaintiffs contend that these laws, most of which failed to pass, were the precursor to § 1091(r) and, therefore, the legislative history in conjunction with the prior proposed legislation is relevant. I reject this contention outright. Again, plaintiffs are attempting to impose some form of *stare decisis* on Congress.

[¶22]   Section 1091(r) was added by § 483 of the Higher Education Amendments of 1998, Pub.L. 105-244, 112 Stat. 1581, 1736. The Higher Education Amendments of 1998 began as H.R. 6 in the House of Representatives. H.R. 6 was comprehensive legislation aimed at extending the authorization for and improving the federal student aid programs under the Higher Education Act of 1965.

> This act will ensure that college will be more affordable, with the lowest interest rates in 17 years . . . It will improve academic quality, campus safety, and provide greater access to all aspects of higher education . . . In this country we need a combination of academic and technology. Through much bloodletting and compromising, H.R. 6 provides the opportunity for our Nation's youth to pursue their education, whether it is academic, technical, or a combination thereof. Also, the conference report adopts the House admonition to the department that higher education consists of not only traditional but also nontraditional opportunities, an incentive provision calling for proprietary school liaisons, and several provisions ensuring against fraud and abuse.

CONFERENCE REPORT ON H.R. 6, HIGHER EDUCATION AMENDMENT S OF 1998, 144 Cong. Rec. H9151-02, H9155 (Remarks of Rep. Peterson, Sept. 28, 1998).

[¶23]   Section 483, the provision at issue in this lawsuit, was added by the Souder Amendment while H.R. 6 was in conference. Representative Souder, in arguing for his amendment, stated:

But I want to go through the actual epidemic that we are facing. We have a major crisis in this country, and the question is are we serious about it or not. And this bill has an important first step . . .

The Chronicle of Higher Education, March 21, 1997, states that crime data from 489 of the largest colleges and universities in this country indicate that drug arrests on college campuses jumped by close to 18 percent in 1995 when they have the data in the fourth consecutive year with a double digit increase. By comparison, all other crimes, including murder, robbery, aggravated assault, burglary, vehicle theft and violations of weapons laws declined. So it is clear in our universities we have had drug use as an increasing problem. This 18 percent jump is even more troubling when you consider that those are the kids that get caught.

According to this same article, researchers at the University of Michigan found that 33.5 percent of the college students surveyed in 1995 had used illegal drugs within that year up 2.1 percent from 1994 and up even further from an earlier survey.

I have recently seen the survey study, and it included 17-year-olds who are just about to head to college. They are seniors in high school, and in there two-thirds said that they knew where they could get marijuana within a day, and 44 percent within an hour or less, that our schools are, in fact, not drug-free even in high school. Thirty-seven percent of the principles (*sic*) said they were drug-free; 46 percent of the teachers. But 76 percent of the students said that their school was not drug-free. They understand they are at risk when they were asked, 17-year-olds, what they thought their greatest problem was. Drugs were not seen as much of a problem, as their major problem, as all the other issues combined. Now this suggests that our children know they are at risk, and we need to take some steps to make sure they are not in danger.

This amendment, to go through some of the history, has been in our bill before coming through the House, the full underlying amendment that came through committee before this adjustment, and my colleague and friend, the gentleman from New York (Mr. Solomon) has been the pioneer and the leader with this . . . and let me explain what the underlying amendment does:

One loses their taxpayer subsidized loan for 1 year for first offense, 2 years for their second offense and indefinitely for the third. If they sell drugs, they get suspended for 2 years for a first offense and indefinitely on a second offense. **The point here is not to get people out of college. That is why we have the treatment program and then they come back in. We want to get people rehabbed so they can learn.** But the problem here is we need to make sure not

10

> just that they are going through treatment programs and insurance companies can make a lot of money and treatment programs can make a lot of money, but that, in fact, people are cured.
>
> This can be done, quite frankly, faster than the suspension period. If they successfully complete a rehab program and they get through a drug test that is clean, they are back in school.
>
> I have no desire to eliminate anybody's opportunity to climb out of the situation they are in to advance their career, but the best way to do that is to make sure one is clean of drugs. And I believe that this amendment will actually make the underlying amendment that we had in committee even stronger and put teeth in that, and I hope that it can be supported by all sides. Because, once again, I want to say it is not a general testing amendment; it is only for people who have been convicted and lost their student loan.

HIGHER EDUCATION AMENDMENTS OF 1998, 144 Cong. Rec. H2510-08, H2580 (Remarks of Rep. Souder, Proceedings and Debates of the 105th Congress, Second Session Wednesday, April 29, 1998) (emphasis supplied).

> H.R. 6 also provides strong incentives for students to stay off drugs. An amendment offered by the gentleman from Indiana, Mr. Souder, and accepted in Committee will eliminate student aid eligibility for students convicted of drug offenses. This provision is based on an amendment offered by Mr. Solomon in 1992, which was accepted by the House. Unfortunately, the Solomon amendment was later dropped in conference. **If we want to ensure safety on our Nation's campuses, it is vital to keep them drug-free**.

HIGHER EDUCATION AMENDMENTS OF 1998, 144 Cong. Rec. H2510-08, H2516 (Remarks of Representative Goodling, April 29, 1998) (emphasis supplied).

[¶24]   The remarks made by Rep. Goodling tie in with other provisions of H.R. 6 which included requirements that institutions eligible to participate in federal student financial aid programs (1) must implement alcohol and drug abuse prevention programs and authorized grants for such programs, Pub.L. 105-244, § 120, codified at 20 U.S.C. § 1011i, and (2) may disclose information regarding drug and alcohol abuse on campus to parents, Pub.L. 105-244, § 952, codified at 20 U.S.C. § 1232g. The latter provision was part of the Foley Amendment which amended the federal academic privacy laws to exclude criminal actions.

[¶25] The debate on H.R. 6 further included the following remarks relevant to the provision under consideration here:

> [The Souder] amendment strengthens the provision based on legislation that I had introduced which suspends Federal financial funds to students who have been convicted of any Federal or State drug use. The amendment offered by my good friend, the gentleman from Indiana (Mr. Souder) reinforces this language by requiring that along with rehabilitation, a student must test negative for two unannounced drug tests to be eligible for Federal education benefits. I supported this additional language and appreciate his invaluable support on this important issue **to identify those students with drug problems and put them on the road to recovery**.
>
> Mr. Chairman, as my colleagues know, a number of years ago we passed the Solomon amendment which suspended the drivers' licenses of all people who were convicted of drug felonies, either selling or using drugs. As my colleagues know, that legislation now has swept the Nation. In New Jersey alone, they have revoked 10,000 drivers' licenses, which means we removed 10,000 drug users from the highways. Many of those people have been rehabilitated now because that license meant so much to them, and now they are obeying the law, they are drug-free, and they have their licenses back. This is the kind of **legislation that we need to focus these young men and women on to make sure we are going to have a drug-free society**.
>
> Again I commend the gentleman from Florida (Mr. Foley) and the gentleman from Pennsylvania (Mr. Goodling) for the excellent legislation. I hope we all come over and vote for the Foley amendment, and then let us pass this great bill.

HIGHER EDUCATION AMENDMENTS OF 1998, 144 Cong. Rec. H2860-03, H2869

(Remarks of Rep. Solomon, May 6, 1998) (emphasis supplied).

> Combating illegal drug and alcohol use on our college campuses is vital to the well-being of our Nation's college students.
>
> During the committee's consideration of H.R. 6, we adopted the amendment offered by the gentleman from Indiana (Mr. Souder) and long championed by the gentleman from New York (Mr. Solomon) **to prohibit students convicted of drug offenses from receiving Federal student aid until they have completed a rehabilitation program and get the help they need to fight their abuse problem**.
>
> Encouraging institutions of higher education to develop and implement drug and alcohol abuse prevention programs should serve to help combat the ongoing

problems this country faces related to drug and alcohol abuse and the violence often associated with both.

HIGHER EDUCATION AMENDMENTS OF 1998, 144 Cong. Rec. H2860-03, H2871 (Remarks of Rep. Goodling, May 6, 1998) (emphasis supplied).

[¶26]   H.R. 6 was sent to the Senate floor where amendments to the House bill were debated. The Souder Amendment and the Foley Amendment were not opposed.

> S. 1882 has several important provisions aimed at reducing and eliminating the illegal use of drugs and alcohol on college campuses. I applaud the provisions for competitive grants to institutions [for] programs of alcohol and drug abuse prevention and education.

HIGHER EDUCATION AMENDMENTS OF 1998  144 Cong. Rec. S7815-01, S7856 (Remarks of Senator Warner, July 9, 1998).

[¶27]   The Senate and House sent the bill to a joint committee to resolve remaining differences in their respective versions of the bill. The bill returned to the floor of the House where, once again, the provision at issue here was mentioned:

> An issue that has not been mentioned here tonight is a provision to fight drugs. I do not think there is any cause, in my view, that is more worthy than to help protect our young people in basic and higher education against drugs. This has a provision, if they are caught in possession or in selling, 1 year, they are out for a year; second offense, 2 years; third time, indefinitely. That is a lot tougher than the National Football League, because one of those players could be arrested today and they will be playing next Sunday.[3]

CONFERENCE REPORT ON H.R. 6, HIGHER EDUCATION AMENDMENT S OF 1998, 144 Cong. Rec. H9151-02, H9155 (Remarks of Rep. Peterson, Sept. 28, 1998).

> There is also an important provision which provides $5 million for fiscal year 1999 for a new grant and award program which would encourage colleges to establish alcohol and drug abuse prevention and education programs. I believe that other institutions should follow the lead of the University of Illinois and its Alcohol 101 program to help deter the increasing use of drugs and alcohol on campus.
>
> Along with the drug and alcohol provisions there is also an incentive to help keep our children safe by requiring administrators and institutions to submit campus

---

[3]This was the only portion of the legislative history of § 1091(r) which the plaintiffs cited in support of their contention that the law is punitive in violation of the Double Jeopardy Clause.

> crime statistics to the Secretary of the Department of Education. It is important that parents have accurate records of the amount and types of crimes taking place.

CONFERENCE REPORT ON H.R. 6, HIGHER EDUCATION AMENDMENT S OF 1998 144 Cong. Rec. H9151-02, H9161-62 (Remarks of Rep. Ewing, September 28, 1998).

[¶28] Section 1091(r) (2006) was amended by section 8021 of the Higher Education Reconciliation Act of 2005, which was part of the Deficit Reduction Act of 2005, enacted on February 1, 2006, Pub. L. 109-171. Section 8021 added the language to § 1091(r)(1) that limited the suspension of student aid "for conduct that occurred during a period of enrollment for which the student was receiving any grant, loan, or work assistance." Section 8021 did not appear in the proposed legislation until S. 467 was proposed on December 18, 2005, in response to H.R. 4261. Neither party cited any statements or remarks in support of or in resistance to section 8021.

[¶29] Pub. L. 109-171 was entitled the "Deficit Reduction Omnibus Reconciliation Act of 2005." The bill was debated at length on the Senate floor. Senate debate makes it clear that Pub.L. 109-171 was first and foremost a deficit reduction bill. *See* 151 Cong. Rec. S12079-04, S12085 (Remarks of Senator Gregg, Nov. 1, 2005). Part of the discussion centered on the provision for increased grant assistance to low and middle income students in obtaining a college education. *See* 151 Cong. Rec. S12079-04, S12089 (Remarks of Senator Gregg); 151 Cong. Rec. S12149-04, 12218 (Remarks of Senator Enzi, Nov. 2, 2005); and 151 Cong. Rec. S12291-01 (Nov. 3, 2005). I could not find, and no party cited to, any Congressional discussion of the 2006 amendment to § 1091 which would evince an intent to make § 1091 a criminal penalty.

[¶30] The legislative history clearly shows that Congress did not intend to establish a criminal penalty when it enacted § 1091(r). At the very most, § 1091(r) was intended to be a civil sanction aimed at combating drug abuse on college campuses and rehabilitating those students who had drug convictions.

### C. Punitive Effect.

[¶31] As set forth above, I must inquire "further whether the statutory scheme was so punitive in effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Hudson, 522 U.S. at 99, 118 S.Ct. at 493. Plaintiffs must show by "clearest proof" that the

suspension of eligibility provision of § 1091(r) is "so punitive in form and effect as to render [it] criminal despite Congress' intent to the contrary." Hudson, 522 U.S. at 104, 118 S.Ct. at 495 (*quoting* United States v. Ursery, 518 U.S. 267, 290, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996)). Hudson set forth "useful guideposts" in making this determination:

> (1) "[w]hether the sanction involves an affirmative disability or restraint";
> (2) "whether it has historically been regarded as a punishment"; (3)
> "whether it comes into play only on a finding of scienter "; (4) "whether its
> operation will promote the traditional aims of punishment - retribution and
> deterrence"; (5) "whether the behavior to which it applies is already a
> crime"; (6) "whether an alternative purpose to which it may rationally be
> connected is assignable for it"; and (7) "whether it appears excessive in
> relation to the alternative purpose assigned."

Hudson, 522 U.S. at 99-100, 118 S.Ct. at 493 (*quoting* Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963)).

[¶32]  Ineligibility for federal student financial aid does not involve an "affirmative disability or restraint" even remotely approaching the restraint of imprisonment. Hudson, 522 U.S. t 104, 118 S.Ct. at 496 (*citing* Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960) (prohibition from participating in the banking industry is "certainly nothing approaching the 'infamous punishment' of imprisonment.").

[¶33]  Ineligibility for the receipt of federal funds has never historically been regarded as punishment. The Supreme Court has "long recognized that "revocation of a privilege voluntarily granted . . . is characteristically free of the punitive criminal element." Hudson, 522 U.S. at 104, 118 S.Ct. at 495-96 (*quoting* Helvering v. Mitchell, 303 U.S. 391, 399 fn. 2, 633 fn. 2, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (disbarment)).

[¶34]  Ineligibility for federal student aid does not require scienter. Ineligibility is automatic upon conviction of a controlled substances offense. In that respect, the behavior to which the ineligibility applies is already a crime. Those two factors are of little weight where the "regulatory scheme applies only to past conduct, which was, and is, a crime." Smith v. Doe, 538 U.S. 84, 105, 128 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003) (holding that sex offender registration does not violate the Double Jeopardy Clause).

[¶35] Certainly, one of the goals of Congress was to deter drug use on college campuses. The 2006 amendment to § 1091(r) limits ineligibility to those whose criminal convictions occur while the student is already receiving federal financial aid. "But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence "may serve civil as well as criminal goals." United States v. Hudson, 522 U.S. at 105, 118 S.Ct. at 496 (*quoting* Ursery, 518 U.S. at 292, 116 S.Ct. at 2149). Taken in the context of the legislative history of the 1998 enactment, Congress intended to deter drug use on campus by, in essence, taking away federal financial aid, while encouraging rehabilitation of those students who use drugs so that they can once again become eligible. The operation of § 1091(r) is not retribution but instead serves very important governmental goals. Section 1091(r) is rationally related to this alternative purpose. The ineligibility provision is not excessive in relation to this purpose given the mechanisms in place for reinstatement of eligibility.

[¶36] Taking into account the Hudson factors, plaintiffs have not shown by the "clearest proof" that the federal student financial aid ineligibility provision in § 1091(r) amounts to a criminal penalty which violates the Double Jeopardy Clause.

### ORDER

[¶37] Based upon the foregoing,

[¶38] IT IS ORDERED:

    1. The defendant's motion (Doc. 18) to dismiss is granted. The plaintiffs' complaint is dismissed with prejudice and without costs.

    2. The plaintiffs' motion (Doc. 19) for a preliminary injunction is denied.

    3. The plaintiffs' motion (Doc. 20) for class certification is denied.

[¶39] Dated this 27th day of October, 2006.

BY THE COURT:

*/s/ Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY *Barbara J. [signature]*
      DEPUTY
(SEAL)